UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| | * | |
| VERSUS | * | NUMBER: 24-105 |
| | * | |
| LEON PARKER, ET AL. | * | SECT. D (1) |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## LEON PARKER'S OPPOSITION TO THE GOVERNMENT'S MOTION TO ADMIT STATEMENTS UNDER THE FORFEITURE BY WRONGDOING EXCEPTION

NOW INTO COURT comes Leon Parker, through undersigned counsel, and respectfully requests that this Honorable Court deny the Government's *Motion in Limine to Admit Statements Under the Forfeiture by Wrongdoing Exception*, ECF Doc. 227. The statements of the decedent Cornelius Garrison constitute inadmissible hearsay that is constitutionally barred by the Confrontation Clause of the Sixth Amendment and the Rules of Evidence. Only if the Court finds that the forfeiture-by-wrongdoing exception applies should these statements even potentially be admitted against defendants. This Court has already scheduled an evidentiary hearing at which the Government will be required to present evidence on this issue. Although as noted below Mr. Parker objects to the timing of that hearing, he fully agrees that such a hearing must be held before the Court decides on the Government's Motion.

Furthermore, the documents that the Government has submitted in support of its Motion do not establish Mr. Parker's involvement in the homicide of Mr. Garrison, and the only direct evidence of that alleged involvement comes from co-defendant Ryan Harris, who was himself the Government's prime suspect in Garrison's murder before he saw an opportunity to help himself by claiming that Mr. Parker was actually the one who committed the murder. Conveniently, this new allegation did not occur until after Mr. Parker was arrested in this case,

1

and it contradicts the factual basis of Jovanna Gardner, who stated that Harris confessed to her that he committed the murder.  These contradictions show the necessity of calling Mr. Harris as a witness at the hearing on the Government's Motion, whenever that might be held, and Mr. Parker supports co-defendant Vanessa Motta's subpoena to Harris, which should not be quashed.

Although additional argument and analysis will be necessary after the evidentiary hearing on this issue, Mr. Parker submits that the Government has not and will not be able to establish that the exception applies as to Mr. Parker.  Furthermore, even if the Court were to find that the exception does apply, then it still must determine whether any proposed statements are otherwise admissible under Rule 403, attorney-client privilege, double hearsay, and other barriers to admissibility.  Of course, the context in which the proposed statements are offered will matter, and it will likely not be until just before or even during trial that such context will become clear. Accordingly, Mr. Parker reserves his right to object on other grounds to any proposed statements that could be deemed admissible under the forfeiture-by-wrongdoing exception before they are presented to the jury at trial.

## I.  OBJECTION TO HOLDING THE EVIDENTIARY HEARING ON THIS ISSUE ON JULY 15, 2025.

As the Court is well-aware at this point, Mr. Parker submits that it would be unfair to hold the evidentiary hearing as to whether the Government can use Garrison's statements against him on July 15th, as currently scheduled.  Mr. Parker has set forth the reasons for his objection to the current date for this fact-based evidentiary hearing in numerous pleadings in this case, *see* Docs. 223, 234, 251, 275, 279, and 323, and he and Mr. Alfortish raised those same objections to scheduling this hearing during the Court's telephone scheduling conference on June 5, 2025. Although Mr. Parker continues to work diligently on this case, substantially more time is

2

required before the defense can reasonably be expected to be prepared for such an important evidentiary hearing. The defense submits that there are particular evidentiary questions that it is working to investigate and answer in advance of any such hearing, but which it has had insufficient time to complete because of (1) the incredibly voluminous nature of the Government's productions and (2) the timeline of those productions, which have continued until very recently, with the last production occurring just over two weeks ago on June 18th. If the Court requires, the defense can provide more details on these investigative issues and the need for additional preparation prior to the hearing in an ex parte pleading or conference so as not to reveal confidential defense strategy.

For these reasons, Mr. Parker re-urges his objection the current date of July 15th for the hearing on the Government's Motion as to him. Of course, Mr. Parker does not object if the hearing applies only to other Defendants' oppositions to the Motion, and if he will be afforded equal opportunity to oppose the Motion during a subsequent evidentiary hearing at a later date, after he has been afforded sufficient time to analyze the Government's discovery and prepare for such a hearing.

## II.     LAW AND ARGUMENT

### A.   Applicable Law on the Forfeiture by Wrongdoing Exception.

#### 1.   *General principles regarding the Confrontation Clause and Rule 804(b)(6)*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." The United States Supreme Court has referred to this right as a "bedrock procedural guarantee," and has stated that "the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-

finding process." *Ohio v. Roberts*, 448 U.S. 56, 64 (1980) (internal quotation omitted) (abrogated on other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004)).

The Confrontation Clause "contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross examine him." *Giles v. California*, 554 U.S. 353, 358 (2008). The Supreme Court and the Fifth Circuit have long regarded cross-examination as "the greatest legal engine ever invented for the discovery of truth." J. Wigmore, Evidence 1367 (3d ed. 1940). *See, e.g., California v. Green*, 399 U.S. 149, 158 (1970); *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987); *United States v. Thevis*, 665 F.2d 616, 63 (5th Cir. 1982); *Carson v. Collins*, 993 F.2d 461, 465 (5th Cir. 1993). The Supreme Court has also underscored that while the goal of the Confrontation Clause is to ensure the reliability of testimonial evidence presented at trial, "it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61.

The Supreme Court has recognized two historical common law exceptions to the Confrontation Clause. The Government relies on one of those exceptions—forfeiture by wrongdoing—in its Motion. This common law exception "permitted the introduction of statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant." *Giles*, 554 U.S. at 359. In *Giles*, the Court reasoned that merely committing a wrongful act that renders a witness unable to testify does not trigger forfeiture of the right to confrontation. Instead, the forfeiture rule applies only when "the defendant [also] intended to

prevent a witness from testifying." *Id.* at 361.  In other words, "the exception applies only if the defendant has in mind the particular purpose of making the witness unavailable." *Id.* at 367.

The forfeiture by wrongdoing exception was codified in Federal Rule of Evidence 804(b)(6). *Davis v. Washington*, 547 U.S. 813, 833 (2006).  Under Rule 804(b)(6), a party may seek to introduce "[a] statement offered against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6).  By its own terms, the exception sets forth three requirements: first, that the witness is unavailable; second, that that unavailability is caused by the defendant; and third, that the defendant acted with the intent to cause the unavailability of the witness.

The proponent of the evidence subject to the exception bears the burden of showing that the opposing party is responsible for the unavailability of the declarant and possessed the requisite intent.  *See, e.g, United States v. Skilling*, 554 F.3d 529, 568 (5th Cir. 2009) (finding that declarations submitted from witnesses, in conjunction with a showing at an evidentiary hearing, did not meet the requisite burden) (vacated on other grounds, *Skilling v. United States*, 561 US. 40 (2010)).  Prior to the codification of the forfeiture doctrine, the Fifth Circuit held that the proponent of the hearsay evidence had to prove wrongdoing and intent by clear and convincing evidence to establish a waiver of the Confrontation Clause.  *United States v. Thevis*, 665 F.2d 616, 631 (5th Cir. 1982).  In support of this standard, the Fifth Circuit noted that "[t]he right of cross-examination is more than a desirable rule of trial procedure." *Id*.  It is instead "an essential and fundamental requirement of the kind of fair trial which is this country's constitutional goal." *Id*.  The Court also stressed the "intimate association between the right to confrontation and the accuracy of the fact-finding process." *Thevis*, 665 F.2d at 631 ("[B]ecause confrontation rights are so integral to the accuracy of the fact-finding process and the search for

truth, in contrast to the exclusionary rule, we conclude that the trial court was correct in requiring clear and convincing evidence of a waiver of this right.").

When the forfeiture doctrine was codified into Rule 804(b)(6), the Advisory Committee on Rules of Evidence advised that courts should apply the preponderance of the evidence standard in determining the admissibility of such evidence.  Fed. R. Evid. 804 Advisory Committee Note, 1997 Amendment.  However, the Fifth Circuit has suggested that the Committee Note did not abrogate the law as it applies to the constitutional standard, noting that the lower burden of proof is applicable "so long as the objection is rooted in the Federal Rules of Evidence and not the Confrontation Clause.  The standard of proof required for a Confrontation challenge may well be higher."  *United States v. Nelson*, 242 Fed. Appx. 164, 171 n. 2 (5th Cir. 2007) (unpublished).  The Fifth Circuit in *Nelson* cited *Davis v. Washington*, 547 U.S. 813, 833 (2006), which distinguished between forfeiture on evidentiary and constitutional grounds, and, according to the Fifth Circuit, took "no position on the standards necessary to demonstrate such forfeiture" when constitutional concerns exist.  *See also United States v. Brown*, 973 F.3d 667, 701 (7th Cir. 2020) (deferring resolution of the question of the standard of proof required for forfeiture by wrongdoing).  These cases suggest that in the Fifth Circuit the clear and convincing standard is to be applied to the Confrontation Clause issue.

### 2. *Forfeiture by wrongdoing cannot be attributed via "conspiratorial liability."*

To the extent the Government suggests that Rule 804(b)(6) can be triggered through conspiratorial liability, that position should be rejected.  The issue of the applicability of conspiratory liability for forfeiture by wrongdoing is a res nova issue in the Fifth Circuit.  Given the important Confrontation Clause rights involved, this Court should not graft *Pinkerton* conspiracy principles on to the Rule 804(b)(6) analysis.

The Seventh Circuit, for its part, has chosen not to apply such a theory, noting in *United States v. Brown* that to do so would be "inconsistent with *Giles*' requirement that forfeiture of confrontation rights occurs only if the *defendant* acts with the specific purpose of precluding the witness's testimony." *Brown*, 973 F.3d at 700 (emphasis in the original). *Giles* and *Crawford* allow for the forfeiture by wrongdoing exception to the Confrontation Clause only because this exception was present in common law at the founding. *Giles,* 54 U.S. 353. The Seventh Circuit surveyed the cases that have applied conspiratory liability to the doctrine of forfeiture by wronging and concluded these cases had not analyzed whether such liability was recognized at common law at the time of the origin of the clause. The *Brown* court then conducted this historical analysis itself, and concluded that "[i]n the 18th century, criminal liability was generally limited to those who acted as principals or those who aided and abetted," and therefore the application of conspiratorial liability is not permitted by *Giles* and *Crawford*. *Brown*, 973 F.3d at 701. The *Brown* court did allow for the utilization of ordinary agency principles in an analysis of whether one conspirator was acting as the agent for another. To the extent it is necessary to do so, this Court should follow the analysis in *Brown*.

## B. The Government has not met its burden of proof on wrongdoing or intent, and an evidentiary hearing is required.

The Government has not met its burden of proving Mr. Parker's responsibility for the alleged wrongdoing nor the requisite intent in its Motion and attachments. Indeed, the only material that has been submitted in support of the exception's application as to Mr. Parker is the testimony from S/A Heimbach during Mr. Parker's detention hearing. This testimony consisted mostly of descriptions of the movement of various phones that were tracked by the Government during its investigation into the homicide. Notably, S/A Heimbach testified that Mr. Parker's

phone was at Mr. Parker's home at the time of the homicide, and not near the scene of the crime. Mr. Parker submits that the transcript of this testimony is insufficient to meet the Government's burden for applying the forfeiture-by-wrongdoing exception as to him.

Mr. Parker further submits that in keeping with Fifth Circuit practice, the Government must convince this Court of the requisite facts in an adversarial hearing, with the defense permitted to test and refute the Government's showing. Federal Rule of Evidence 104 governs preliminary decisions regarding the admissibility of evidence. The notes of the Advisory Committee on Rule 104 state that "[i]f the question [of admissibility] is factual in nature, the judge will of necessity receive evidence pro and con on the issue." Pre-trial evidentiary hearings are the standard manner by which the forfeiture by wrongdoing exception is adjudicated in the Fifth Circuit. *See., e.g., United States v. Gurrola*, 898 F.3d 524, 534 (5th Cir 2018)(affirming the use of a pretrial evidentiary hearing to determine the applicability of the forfeiture doctrine); *Skilling,* 554 F.3d at 568 (affirming district court's denial of motion to admit hearsay pursuant to forfeiture exception after reviewing witness affidavits and holding an evidentiary hearing at which witnesses appeared and were questioned); *United States v.* Age, No. 16-32 (E.D. La. Apr. 1, 2022), 2022 WL 991759 at *1 (noting that Court held evidentiary hearing).

This Fifth Circuit practice of resolving forfeiture-by-wrongdoing questions via evidentiary hearings is consistent with rulings in multiple other circuits requiring or regularly engaging in such hearings. *See, e.g., United States v. Dhinsa*, 243 F.3d 635, 653-54 (2d Cir. 2001) (holding that "prior to finding that a defendant waived his confrontation rights with respect to an out-of-court statement by an actual or potential witness admitted pursuant to Rule 804(b)(6), the district court must hold an evidentiary hearing outside the presence of the jury in which the government has the burden of proving by a preponderance of the evidence that (1)

8

defendant . . . was involved in, or responsible for, producing the unavailability of the declarant…
and (2) the defendant. . . acted with the intent of procuring the declarant's unavailability as an
actual or potential witness"); *United States v. Cherry,* 217 F.3d 811 (10th Cir. 2021) (affirming
that before admitting out of court statements because of the defendant's alleged coercion, "the
judge must hold an evidentiary hearing in the absence of the jury and find by a preponderance of
the evidence that the defendant's coercion made the witness unavailable."

A full evidentiary hearing is particularly critical in cases like this, in which the alleged
wrongdoing is essentially identical to the charged conduct to be determined at trial.  For
example, in *United States v. Mikos*, the district court declined to admit hearsay statements based
on the government's offer only to proffer evidence outside of an evidentiary hearing, noting that
such a procedure was particularly worrisome when it amounted to "allowing otherwise
inadmissible evidence to prove a defendant's guilt in a capital case based upon a judge's pretrial
conclusion that the defendant is in fact guilty of that very crime."  *United States v. Mikos,* No.
02-CR-137 (N.D. Ill. July 16, 2004), 2004 WL 1631675 at *5 (*citing United States v. Scott*, 284
F.3d 758, 760-62 (7th Cir. 2002) (admitting hearsay evidence pursuant to the forfeiture by
wrongdoing exception only after an evidentiary hearing)).

In *United States v. Rivera*, the Fourth Circuit articulated more specifically why it is
necessary to hold an evidentiary hearing regarding forfeiture by wrongdoing, noting that "the
Rule 804(b)(6) hearing is critical to a defendant's defense."  The Court stressed that such a
hearing addresses not only the admission of hearsay but also the forced waiver of a defendant's
right to confront:

> While courts refer to Rule 804(b)(6) motions as hearsay exceptions, they actually
> operate as a forced waiver of a defendant's Sixth Amendment right to confront
> the witness whose hearsay statement will be offered against the defendant. "There

> are few subjects, perhaps, upon which . . . courts have been more nearly
> unanimous in their expressions of belief that the right of confrontation and
> cross-examination is an essential and fundamental requirement for the kind of fair
> trial which is this country's constitutional goal." Accordingly, a defendant's right
> to contest the government's Rule 804(b)(6) motion is an integral part of his right
> to a fair trial. His right to compel witnesses in his favor to contest that motion is,
> therefore, identical to his right to compel witnesses in his favor at trial.

412 F.3d 562, 569 n. 7 (4th Cir. 2005) (citations omitted). The court in *Rivera* also held that the

government cannot decline to provide information regarding the allegation of wrongdoing on the

basis of the wrongdoing itself, labeling this "circular reasoning." "We conclude that the

government's interest in protecting the information involved in its broader investigation must

yield to the defendant's Sixth Amendment right, based upon a proper showing, to access

evidence critical to his defense." *Id.* at 569.

The Fifth Circuit has also suggested that the Government cannot simply rely on the

hearsay statements of Mr. Garrison themselves to meet its evidentiary burden. The Fifth Circuit

in *Skilling* made clear that "this court has not resolved whether, to invoke Rule 804(b)(6)

properly, a party must make this evidentiary showing with material independent of the hearsay

itself. This is a question of first impression, and there are persuasive arguments for either

position or for a hybrid of the two." *Skilling*, 554 F.3d at 568. No Fifth Circuit case has resolved

the issues since, and so it is still res nova for this Court, and there are compelling reasons why

that would be an improper course. The evidentiary prohibition on hearsay is a procedural

protection against unreliable and unfair evidence. The forfeiture by wrongdoing exception strips

the defendant of that protection because of his alleged wrongdoing. But to use the very same

presumptively unreliable evidence to strip the defendant of protection against that exact form of

evidence would amount to circular reasoning and would deny the defendant the ability to ever

effectively challenge such evidence in court.

In this case, the Government admits that Mr. Garrison's statements do not mention Mr. Parker at all, ECF Doc. 227-1 at p. 20, and so they could not be used to meet the Government's burden as to him, even if it were appropriate to consider them for that purpose.  Furthermore, Mr. Parker submits that the materials attached to the Government's Motion are insufficient to establish the exception as to him.  S/A Heimbach's testimony at the detention hearing did not establish by a preponderance or by clear and convincing evidence Mr. Parker's involvement in the homicide.  Instead, Heimbach testified mostly about the movements of various phones, and specifically testified that Mr. Parker's phone was nowhere near the location of the homicide at the time that it happened.  The only direct evidence that the Government can cite regarding Mr. Parker's alleged participation in the homicide comes from the factual basis of Mr. Harris.  However, a co-defendant's factual basis is pure hearsay and cannot be offered into evidence against Mr. Parker.  *United States v. Perry*, No. 15-154 (E.D. La. Feb. 2, 2016), 2016 WL 410584 at *2 (noting that factual basis in criminal case is a hearsay document admissible against party only if it falls within an exception).  *See also United States v. Vera*, 893 F.3d 689, 692 (9th Cir. 2018) (holding that district court erred by considering co-defendants' factual bases at sentencing because documents were hearsay and not within an exception).  This fact highlights the appropriateness of subpoenaing Mr. Harris to testify at the evidentiary hearing, as Ms. Motta has done.

## C. The Court should decline to quash the subpoena for Mr. Harris to testify at the evidentiary hearing.

In its Motion to Quash the subpoena to Mr. Harris, the Government contends that its intent is to bear its evidentiary burden on the Rule 804(b)(6) issue solely through S/A Heimbach's testimony.  ECF Doc. 333-1 at p. 14.  Of course, that statement is blatantly

contradicted by the Government's Rule 804(b)(6) Motion itself, which quotes extensively from the factual bases of both Mr. Harris and Ms. Gardner. ECF Doc. 227-1 at pp. 10-12. Furthermore, the Government specifically cites to Harris's factual basis when it contends that Garrison's statements can be used against Mr. Parker, despite the fact that Garrison never mentioned Mr. Parker. *Id*. at p. 20. The Government therefore appears to be trying to have it both ways— rely on Mr. Harris's factual basis to try to convince the Court to accept its Rule 804(b)(6) argument but then disclaim that reliance when the defense moves to test the evidence at an adversarial hearing. Of course, such a position is entirely unfair. Mr. Harris's factual basis is nothing more than hearsay as to Mr. Parker, and it is flatly contradicted by Ms. Gardner's factual basis, which states that Harris confessed to her that he killed Garrison. The defense is entitled to test the Government's evidence on the Rule 804(b)(6) motion at an evidentiary hearing, and defendants are entitled to call witnesses at such a hearing. As much as the Government would apparently like him to do so, undersigned counsel has confirmed with Mr. Harris's attorney that Harris does not intend to invoke his Fifth Amendment privilege to prevent his testimony at the hearing. There is therefore no reason to quash Ms. Motta's subpoena to Harris for the upcoming hearing.

## III.    CONCLUSION AND REQUESTS

For all the foregoing reasons, Mr. Parker requests that this Court (1) re-schedule the evidentiary hearing on the Government's rule 804(b)(6) Motion until he has had a reasonable opportunity to analyze the discovery that has been produced and to prepare for such a hearing; (2) permit the subpoena to testify to Mr. Harris at the evidentiary hearing, whenever it is held; (3) allow for supplemental briefing on the Rule 804(b)(6) issue after all relevant evidence is adduced at a hearing; and (4) ultimately deny the Government's Motion as to Mr. Parker.

Furthermore, Mr. Parker reserves his right to raise any additional evidentiary or constitutional objections to any evidence the Government ultimately seeks to introduce against him at trial.

Respectfully submitted:

/s/ Stephen J. Haedicke
**STEPHEN J. HAEDICKE** (Bar Roll No. 30537)
Law Office of Stephen J. Haedicke, LLC
1040 Saint Ferdinand St.
New Orleans, LA  70117
(504)291-6990 Telephone
(504)291-6998 Fax
Stephen@haedickelaw.com

Counsel for Leon Parker

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2025 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

/s/ Stephen J. Haedicke